**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnny Gurule, | No. CV-21-01651-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Johnny Gurule seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied in part his application for disability insurance benefits under §§ 216(i) and 223(d) of the Social Security Act. For reasons stated below, the Court will vacate the decision in part and remand for further proceedings.

**I.     Background.**

Plaintiff is a 43-year old man with work history as a spa technician. Tr. 27, 62.[1] He attended special education classes through the eighth grade and does not have a G.E.D. or any additional education or job training. Tr. 43. On February 13, 2019, while Plaintiff was test driving a motorcycle, the motorcycle skidded out from under him as he took a turn (the "2019 accident"). Tr. 385. As a result, Plaintiff was unconscious for several minutes,

---

[1] "Tr." refers to the administrative transcript in this case. Where possible, the Court will cite to administrative transcript page numbers rather than exhibit numbers.

fractured his skull, cheek, and hand, and spent six days in the hospital. *Id.* Plaintiff was involved in a second motorcycle accident on November 29, 2020 when a car collided with him (the "2020 accident"). Tr. 986. Plaintiff suffered extensive injuries which necessitated the amputation of his left leg below the knee. Tr. 1005-06.

Plaintiff applied for social security benefits on March 12, 2019, alleging disability beginning February 13, 2019. Tr. 15. Plaintiff alleges that the following conditions rendered him unable to work starting on the application date: status-post left zygomatic arch fracture and left frontotemporal non-depressed calvarium fracture, obesity, status-post small subdural hematoma, right acromioclavicular joint arthritis, status-post first metacarpal fracture, and headaches. Tr. 18.[2] Following the 2020 accident, Plaintiff alleges the following additional conditions render him unable to work: status-post partial left foot amputation, below the knee amputation, mild neurocognitive disorder, and a history of polysubstance abuse in remission. *Id.*

Plaintiff and a vocational expert ("VE") testified at a hearing before Administrative Law Judge ("ALJ") Carla Waters on January 11, 2021. Tr. 36-61. On March 22, 2021, the ALJ found that Plaintiff was disabled within the meaning of the Social Security Act beginning on November 29, 2020 (the "Onset Date"), but not disabled prior to the Onset Date. Tr. 27-29. This became the Commissioner's final decision when the Appeals Council denied review on September 13, 2021. Tr. 1-6. Plaintiff commenced this action for judicial review on September 24, 2021 (Doc. 1), and the parties briefed the issues after receipt of the certified administrative transcript (Docs. 16, 21, 24).

**II.  Standard of Review.**

The Court reviews only those issues raised by the party challenging the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may vacate the decision where it is based on legal error or not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Orn v. Astrue*, 495 F.3d 625, 630

---

[2] Plaintiff also alleged disability due to a testicular cyst, but the ALJ found the condition to be non-severe and Plaintiff does not appeal that determination. Tr. 18; Doc. 16.

(9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Magallanes*, 881 F.2d at 750. In determining whether substantial evidence supports the ALJ's decision, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (citation omitted). The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the medical evidence, and the decision must be upheld where the evidence is susceptible to more than one rational interpretation. *Magallanes*, 881 F.2d at 750; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755.

### III. The ALJ's Sequential Evaluation Process.

Whether Plaintiff is disabled is determined using a five-step process. Plaintiff must show that (1) he has not engaged in substantial gainful activity since the alleged disability date, (2) he has a severe impairment, and (3) his impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") – the most he can do despite his impairments – precludes him from performing past work. If Plaintiff meets his burden at step three, he is presumed disabled and the process ends. If Plaintiff meets his burden at step four, then (5) the Commissioner must show that Plaintiff is able to perform other available work given his RFC, age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(i)-(v); *see Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The ALJ "presume[d]" at step one that Plaintiff had not engaged in substantial gainful activity since March 12, 2019 – the date he filed his application. Tr. 18. The ALJ noted that Plaintiff had no earnings posted to his record since 2008, but that he testified that he in fact worked (but was not on the payroll) doing spa deliveries, pick-ups, and repairs for his father at a family-owned business on a part-time basis until the 2019 accident. *Id.* at 17. The ALJ detailed inconsistent information provided by Plaintiff to medical and mental health providers indicating that he had worked part- or full-time up

until the 2020 accident. *Id.* at 18. Based on these inconsistencies, the ALJ stated that "it is difficult to avoid the conclusion that [Plaintiff] under reported his work activity to the Administration." *Id.* She went on to state that, although she would presume that his employment was below the substantial gainful activity level "in order to proceed with the sequential evaluation process," that fact "ha[d] not been confirmed with any certainty." *Id.*

At step two, the ALJ found that Plaintiff's status-post left zygomatic arch fracture and left frontotemporal non-depressed calvarium fracture, obesity, status post-small subdural hematoma, right acromioclavicular joint arthritis, and status-post first metacarpal fracture constituted severe impairments since the application date. Tr. 18. The ALJ further found that beginning on the Onset Date, Plaintiff's status-post partial left foot amputation, below the knee amputation, mild neurocognitive disorder, and history of polysubstance abuse in remission also constituted severe impairments. *Id.* The ALJ found that Plaintiff's testicular cyst and headaches were not severe impairments. Tr. 18-19. Evidence concerning Plaintiff's testicular cyst, the ALJ found, did not show associated limitations for a 12-month period and was thus non-severe. Tr. 19. The ALJ also found that Plaintiff's headaches lacked the frequency, severity, and duration to be severe. *Id.*

At step three, the ALJ determined that Plaintiff's impairments, either before or after the Onset Date, did not meet or medically equal a listed impairment. *Id.*

The ALJ found at step four that prior to the Onset Date Plaintiff had the RFC to perform light work[3] with the following additional limitations: Plaintiff could stand and walk for more than six hours during an eight-hour workday; could sit for more than six hours during an eight-hour workday with normal breaks; could not climb ladders, ropes, or scaffolds; could frequently balance, stoop, kneel, crouch, and crawl; could occasionally reach, handle, finger, and feel with his right upper extremity; could occasionally be exposed to extreme cold or heat, fumes, odors, dusts, gases, and poor ventilation; could not be exposed to hazards like moving machinery or unprotected heights; and could perform

---

[3] Light work is defined in 20 C.F.R. § 416.967(b) and involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Light work can require a good deal of walking or standing or sitting most of the time with some pushing and pulling of arm or leg controls. § 416.967(b).

simple routine work tasks involving simple work-related decisions and simple instructions provided by demonstration or diagram rather than in writing. Tr. 21. Beginning on the Onset Date, the ALJ found that Plaintiff had the RFC to perform sedentary work[4] with the following additional limitations: Plaintiff can stand and walk for six hours in an eight-hour workday; can sit for more than six hours in an eight-hour workday with normal breaks; can never climb ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, crouch, and crawl; can occasionally reach, handle, finger, and feel with his right upper extremity; can be occasionally exposed to extreme cold and heat, fumes, odors, dusts, gases, and poor ventilation; cannot be exposed to hazards like moving machinery and unprotected heights; can perform simple routine work tasks involving simple work-related decisions and simple instructions provided by demonstration or diagram rather than in writing; and should avoid bright lights. Tr. 26. Based on this RFC, the ALJ found that Plaintiff has been unable to perform any past relevant work since the application date. Tr. 27.

Considering Plaintiff's age, education, and work experience, the ALJ found at step five that prior to the Onset Date Plaintiff could have performed other work. Tr. 28. The ALJ specifically found that Plaintiff could have worked as an investigator, usher, or boat rental clerk and that these jobs were available in significant numbers in the national economy. *Id.* The ALJ thus found Plaintiff not disabled within the meaning of the Social Security Act before the Onset Date. *Id.* The ALJ found that beginning on the Onset Date, however, there were no jobs existing in significant numbers in the national economy that Plaintiff could perform. Tr. 28-29. The ALJ therefore found that Plaintiff became disabled on the Onset Date and continued to be disabled through the date of the ALJ's decision. Tr. 29. The ALJ further concluded that "improvement is expected with appropriate treatment" and recommended a "continuing disability review" 12 months from the decision date. *Id.*

---

[4] Sedentary work is defined in 20 C.F.R. § 416.967(a) and involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Work can be sedentary even if walking and standing are occasionally required. § 416.967(a).

**IV.   Discussion.**

Plaintiff contends that the ALJ erroneously found him not disabled from February 13, 2019, to November 28, 2020. Doc. 16. Specifically, Plaintiff argues that the ALJ erred by (1) not articulating sufficient reasons for rejecting the opinion of Dr. Amanda Nellis (*id.* at 8), (2) not including one of the restrictions assessed by Dr. Anne Koss-Leland (*id.* at 11), and (3) finding his headaches to be non-severe (*id.* at 12). Plaintiff also argues that the Court should remand for an award of benefits. *Id.* at 13.

**A.   Dr. Amanda Nellis.**

Dr. Nellis conducted a psychological evaluation of Plaintiff on February 18, 2020, at the request of the state agency. Tr. 25, 568. She diagnosed Plaintiff with a mild intellectual disability, adult antisocial behavior, and unspecified opioid, cocaine, and amphetamine or other simulant disorders, each in remission. Tr. 574. She indicated that her diagnoses were based on standards set out in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5"), the Wechsler Adult Intelligence Scale ("WAIS"), and the Wechsler Memory Scale ("WMS"). Tr. 574-75. Dr. Nellis noted that Plaintiff reported a lifelong history of learning disability, being unable to read, and needing special education classes in school. Tr. 575. She also noted that Plaintiff needed simplified instructions, repeated exposure to information, and prompting to provide responses during the evaluation. *Id.* Dr. Nellis found that Plaintiff's general cognitive abilities, verbal comprehension, working memory, processing speed abilities, and immediate, delayed, and auditory memory abilities were in the extremely low range. *Id.* She found that his perceptual reasoning abilities and visual memory abilities were in the borderline range. *Id.* And she observed that Plaintiff put forth good effort and was cooperative throughout the examination. *Id.*

Dr. Nellis also filled out a psychological medical source statement in which she stated that Plaintiff had a current psychological diagnosis and associated limitations that were expected to last 12 continuous months from the date of her exam. Tr. 577. Dr. Nellis provided her "own substantiated medical findings" about Plaintiff's abilities in the areas of

understanding and memory, sustained concentration and persistence, social interaction, and adapting to change. Tr. 577-78. Regarding Plaintiff's abilities of understanding and memory, Dr. Nellis noted that he "evidenced the inability to read or spell," and she opined that he would have difficulty remembering or understanding complex information, would not be able to follow multistep instructions, and may be able to remember and understand simple and repetitive tasks, but would likely need close supervision and direction when learning new tasks. Tr. 577. Addressing Plaintiff's abilities of sustained concentration and persistence, Dr. Nellis opined that without close monitoring and support, Plaintiff would resign from tasks that were difficult for him and noted that during her examination she had to closely watch for errors, though at times he would self-correct. *Id.* She opined that his ability to maintain regular attendance was compromised by lack of trust in others, antisocial traits, and memory and understanding issues. *Id.* Regarding Plaintiff's abilities of social interaction, Dr. Nellis noted his depressed and sometimes tearful mood that persisted throughout the examination. *Id.* She concluded that Plaintiff had difficulties with word and idea retrieval that made him communicate ideas slower than most. *Id.* She noted his history of incarceration and opined that all of these factors "negatively impact his ability to maintain socially appropriate behavior." *Id.* Dr. Nellis opined that Plaintiff would likely have trouble getting along with those in supervisory roles and would have inconsistent peer-to-peer relationships. Tr. 577-78. Regarding Plaintiff's ability to adapt to changes, Dr. Nellis opined that he can respond appropriately to most hazards, but would have difficulties adjusting to environmental changes. Tr. 578.

After reciting some of Dr. Nellis's diagnoses and findings, the ALJ stated: "This opinion is inconsistent with Dr. Franza's opinion and the claimant's work history, which is classified as skilled work. As such, the undersigned finds this opinion is not consistent with the treatment record and other medical opinions and is not persuasive." Tr. 25-26.

Plaintiff argues that the ALJ failed to give legitimate reasons based on supportability and consistency to reject Dr. Nellis's opinion. Doc. 16 at 8. He argues that the ALJ did not provide enough detail for the court to meaningfully review her reasoning and that she

failed to connect her rejection of Dr. Nellis's opinion with record evidence. *Id.* Plaintiff notes that Dr. Franza's opinion, unlike Dr. Nellis's, did not give a function-by-function assessment, opine on any work-related limitations, or offer any diagnosis using certain diagnostic tools that Dr. Nellis employed, making it unclear without more explanation how the opinions could be inconsistent. *Id.* at 9-10.

Plaintiff further argues that the ALJ did not sufficiently explain how his work history conflicted with Dr. Nellis's opinion. *Id.* at 10. Noting that the ALJ did not specify whether she thought that Plaintiff's work history before or after the 2019 accident was contradictory, Plaintiff concedes that it is most reasonable to interpret the ALJ's comments as referring to Plaintiff's work activity after the 2019 accident. *Id.* Plaintiff argues that his work history does not conflict with Dr. Nellis's opinion and that the record reflects that he worked with his father repairing, picking up, and delivering spas for about three hours a day, often developing a headache that led him to stop working. *Id.* This work, Plaintiff argues, was in a sheltered, non-competitive environment and performed in exchange for financial contributions directly from his parents "well in excess" of the services he performed. *Id.* Though the ALJ characterized this work as "self-employment," Plaintiff argues that she did not make the required findings regarding the value of the work. *Id.* at 10-11 (citing SSR 83-34). Finally, Plaintiff urges that his statements regarding his work history should be interpreted with "some leniency" considering the record evidence of his traumatic brain injury, intellectual disability, and illiteracy. *Id.* at 11.

Defendant contends that the ALJ properly evaluated Dr. Nellis's opinion. Doc. 21 at 10. Defendant argues that Dr. Nellis's findings were "inconsistent with the unremarkable mental status findings in the record that showed Plaintiff was alert, oriented, had a normal fund of knowledge, good insight and judgment, and normal mood and affect." *Id.* Defendant further argues that Dr. Nellis's opinion, and particularly her opinion about Plaintiff's social interactions, was at odds with Plaintiff's work history as a spa technician and his living arrangements with family and a significant other. *Id.*

Because Plaintiff filed his application after March 27, 2017, revised regulations regarding the evaluation of medical source opinions apply. The Ninth Circuit recently decided that "[t]he revised social security regulations are clearly irreconcilable with" its longstanding treating source rule, which categorized medical source opinions in a three-tiered hierarchy that "accord[ed] special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Under the revised regulations, an ALJ's decision to discredit any medical opinion "must simply be supported by substantial evidence." *Id.* at 787. There is no "inherent persuasiveness" to evidence from either a claimant's own medical sources or government consultants. *Id.* at 791 (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416)). "The most important factors" an ALJ must consider are "supportability" and "consistency." *Id.* "Supportability" is "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id.* at 791-92 (quoting § 404.1520c(c)(1)). "Consistency" is "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting § 404.1520c(c)(2)).[5]

But "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792. An ALJ "must articulate how persuasive [she] finds all of the medical opinions from each doctor or other source, and explain how [she] considered the supportability and consistency factors in reaching these findings." *Id.* (citing § 404.1520c(b)) (cleaned up).

The ALJ found Dr. Nellis's opinion not persuasive based on inconsistencies with Dr. Franza's opinion and Plaintiff's work history involving skilled work. Tr. 25. The

---

[5] The Ninth Circuit emphasized that "to avoid confusion . . . ALJs should endeavor to use these two terms of art – 'consistent' and 'supported' – with precision." *Id.* at 793, n.4.

ALJ's statements, however, are brief, conclusory, and contain no citations to the record enabling the Court to conduct a meaningful review of her analysis. *Baker v. Comm'r of Soc. Sec. Admin.*, No. CV-21-08084-PCT-SPL, 2022 WL 2390945, at *3 (D. Ariz. July 1, 2022) ("Without any [record] citations, and without any meaningful explanation of the ALJ's reasoning, there is simply no way for the Court to assess the legitimacy of the ALJ's conclusions.") (quotations and citations omitted); *Burkart v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08326-PCT-JJT, 2022 WL 1485753, at *3 (D. Ariz. May 11, 2022) (finding remand for rehearing warranted where ALJ's evaluation of state agency consultant opinion was brief, conclusory, and unsupported by any citation to the medical record).

The ALJ's consideration of Dr. Franza's opinion is similarly sparse, making it challenging for the Court to draw any inferences based on evidence the ALJ discussed elsewhere. *See Magallanes*, 881 F.2d at 755 (reviewing courts can read other portions of ALJ's decision and draw inferences "if those inferences are there to be drawn").[6] It is unclear to the Court how Dr. Franza's opinions conflict with Dr. Nellis's, given that he did not opine on Plaintiff's work-related limitations and reached many of the same diagnoses as Dr. Nellis.[7]

---

[6] After reciting some of Dr. Franza's findings, the ALJ stated, without reference to the record:

> Dr. Franza's opinion for the claimant's mental abilities is consistent with the medical evidence of record. The undersigned finds that Dr. Franza appropriately balances the claimant's subjective complaints with behavioral observations. His opinion also appears congruent with the longitudinal medical evidence of record. Accordingly, the undersigned finds this medical consultant's opinion regarding the claimant's mental abilities persuasive.

Tr. 25.

[7] Dr. Franza diagnosed Plaintiff with antisocial personality disorder, moderate cannabis use disorder, and severe methamphetamine use disorder in remission. Tr. 25; 484. He deferred diagnosis on Plaintiff's intellectual functioning as measured by the WAIS and WMS based on his impression that Plaintiff did not put forth good effort and may have been affected by his use of medical marijuana, which Plaintiff denied using prior to the examination. Tr. 25; 484-85. Dr. Nellis also noted Plaintiff's use of medical marijuana and that he denied using it prior to the examination. Tr. 571. She did not diagnose Plaintiff with cannabis use disorder, but did reach a diagnosis of mild intellectual disability as measured by the WAIS and WMS. Tr. 574-75. She also observed that Plaintiff put forth good effort and was cooperative with the assessment. Tr. 575.

Nor is it clear how the ALJ considered Plaintiff's work history, which the ALJ classified as "skilled," to contradict any particular portion of Dr. Nellis's opinion.[8] Although the ALJ discussed Plaintiff's work history in other portions of her decision, the discussion was primarily in reference to conflicting information provided by Plaintiff to medical providers regarding whether and how many hours he worked. Tr. 17-18. This does not help the Court discern the ALJ's reasoning.

Though Defendant supplies additional reasoning and various record citations in the briefing, the Court is "constrained to review the reasons the ALJ asserts" and cannot affirm on the basis of evidence the ALJ did not discuss. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Moreover, the ALJ failed entirely to explain whether or how she considered the supportability factor of Dr. Nellis's opinion. *Woods*, 32 F.4th at 792 (an ALJ "must . . . explain how [she] considered the supportability and consistency factors in reaching [her] findings"); *Mascarenas v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00641-PHX-SPL, 2022 WL 2448279, at *3-5 (D. Ariz. July 6, 2022) (reversing for rehearing where it was "obvious the ALJ found [the physician's] opinion to be inconsistent with the larger evidentiary record, [but] the ALJ did not articulate how she considered the supportability factor in her analysis"); *Noderer v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00718-PHX-MTL, 2022 WL 1839102, at *4 (D. Ariz. June 3, 2022) (reversing for rehearing where "the ALJ only addressed the supportability factor of [the physician's] opinion and failed to address the factor of consistency").

**B.  Dr. Anne Koss-Leland.**

Dr. Koss-Leland conducted a physical examination of Plaintiff at the request of the state agency and submitted an opinion dated June 15, 2019. Tr. 24. As relevant here, Dr.

---

[8] The Court notes that the ALJ, in accord with VE testimony during the hearing, found Plaintiff's past relevant work to be as a "spa technician," referencing the Dictionary of Occupational Titles ("DOT") 334.374-010 and noting an SVP level of 5. Tr. 27, 56. But the entry for DOT 334.374-010 is entitled "Masseur/Masseuse" and references an SVP level of 4. *See OALJ Law Library, DOT, Service Occupations 363.681-010 to 389.687-018*, Dep't of Lab., https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT03A (last visited July 14, 2022).

Koss-Leland noted that Plaintiff suffered from photophobia following the traumatic brain injury he sustained in the 2019 accident and opined that Plaintiff should be restricted from working around excessive light. Tr. 297-98.

The ALJ found Dr. Koss-Leland's opinion "consistent with the medical evidence of record" and "persuasive prior to [the Onset Date]," (Tr. 24), but did not include any restriction from working around excessive light in her RFC assessment for the period before the Onset Date (Tr. 21). In her RFC assessment for the period after the Onset Date, the ALJ did find that Plaintiff "should avoid bright lights." Tr. 26.

Plaintiff argues that the ALJ erred by failing to include this restriction before the Onset Date. Doc. 16 at 11. Defendant responds that the ALJ properly omitted the excessive light restriction because she determined that Plaintiff's headaches were a non-severe impairment. Doc. 21 at 10. But the ALJ did not offer this reason, nor is it supported by the record. Based on Dr. Koss-Leland's assessment, Plaintiff's photophobia stemmed from his traumatic brain injury, not his headaches. Tr. 297 ("[Plaintiff] does have photophobia since his TBI."). The ALJ found that the injuries giving rise to Plaintiff's traumatic brain injury were severe. Tr. 18 (finding Plaintiff's "status-post zygomatic arch fracture and left frontotemporal non-depressed calvarium fracture . . . [and] status post subdural hematoma" to be severe impairments). Moreover, the ALJ noted that Plaintiff should avoid working around bright lights in her RFC determination after the Onset Date, but did not find that Plaintiff's headaches became severe after that date. *See* Tr. 26.

The ALJ erred by providing no explanation for rejecting a portion of Dr. Koss-Leland's limitations. *Woods*, 32 F.4th at 787 (an ALJ's decision to discredit any medical opinion must be supported by substantial evidence); *Sharon C. v. Comm'r of Soc. Sec.*, No. 3:21-cv-00862-JR, 2022 WL 898617, at *3 (D. Or. Mar. 28, 2022) (reversing where ALJ failed to include persuasive limitation without explanation).

### C.     Headaches

A claimant "has the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which . . .

has lasted or can be expected to last for a continuous period of not less than 12 months." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004) (quoting 42 U.S.C. § 423(d)(1)(a)); *see also* 20 C.F.R. §§ 404.1509, 416.909. At step two of the sequential evaluation process, an ALJ must determine whether a claimant has a severe impairment meeting the 12-month requirement. SSR 16-3P, 2017 WL 5180304, at *11 ("At step 2 of the sequential evaluation process, [the ALJ] determine[s] whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months or end in death.").

The ALJ found at step two that Plaintiff's headaches were non-severe because they did not occur with a frequency or severity that would result in more than minimal limitation on his ability to work. Tr. 19. The ALJ further found that Plaintiff had not shown that his headaches met the durational requirement because they appeared to have resolved within a 12-month period. Tr. 18. The ALJ detailed various records where Plaintiff complained of headaches, the latest on January 15, 2020, approximately 11 months after the 2019 accident. *See* Tr. 18-19.

Plaintiff argues that the ALJ erred by finding his headaches non-severe. Doc. 16 at 12. The ALJ stated that evidence of his headaches appears sparingly in the record, but Plaintiff argues that he in fact complained of headaches at nearly every appointment in 2019 and 2020. *Id.* Plaintiff notes that he was prescribed Propranolol, Divalproex, Butalbital, medical marijuana, and Imitrex for his headaches. *Id.* He contends that the ALJ erred by finding it significant that Plaintiff did not report being precluded from work by headaches, noting that a condition does not have to preclude all work to be severe. *Id.* at 13. Plaintiff further contends that he alleged disability due to a fractured skull and it "is reasonable that a fractured skull might cause a headache." *Id.* at 12.

Defendant responds that Plaintiff still fails to establish that his headaches meet the durational requirement and that this determination is supported by substantial evidence. Doc. 21 at 6. The Court agrees.

Substantial evidence supports the ALJ's finding that Plaintiff's headaches are durationally non-severe. Although the records reflect many instances where Plaintiff complained of headaches, the ALJ properly found that his last complaint was on January 15, 2020, only 11 months after the 2019 accident. Tr. 19 (citing Tr. 502). A careful review of the record shows that the January 15, 2020 treatment note is the latest evidence of Plaintiff's headache complaints, and the administrative transcript contains no other medical records until Plaintiff's second accident in November 2020. Plaintiff therefore has not carried his burden of satisfying the 12-month durational requirement at step two. *See Trinidad v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00442-TUC-RM, 2022 WL 831666, at *4 (D. Ariz. Mar. 21, 2022) (affirming determination that condition was durationally non-severe where medical records showed plaintiff stopped seeking treatment for the condition in less than a year); *Aceves v. Berryhill*, No. 2:17-cv-1644-EFB, 2018 WL 4447735, at *6 (E.D. Cal. Sept. 18, 2018) (affirming determination of durational non-severity where the plaintiff received treatment for less than a year and noting that "although plaintiff's shoulder condition was undoubtedly severe immediately after the fracture and for some months thereafter, the severity did not meet the 12 month durational requirement"); *Herrera v. Comm'r of Soc. Sec.*, No. 1:20-cv-01026-SAB, 2022 WL 1165830, at *11 (E.D. Cal. Apr. 20, 2022) (recommending affirmance of ALJ's finding of durational non-severity, noting "[t]he Court finds it significant that there are no medical records proffered as to the [non-severe] conditions after February of 2019"). The Court will affirm the ALJ's determination that Plaintiff's headaches were non-severe.

**D.    Scope of Remand.**

The ALJ erred in her treatment of Drs. Nellis and Koss-Leland's opinions. Plaintiff contends that the Court must credit this evidence as true and remand for an award of benefits. Doc. 16 at 13-14. Defendant argues that remand is a more appropriate remedy. Doc. 21 at 13.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon*

*v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits if (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) the ALJ would be required to find the claimant disabled if the improperly discredited evidence were credited as true. *Id.*

The second factor is satisfied; as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting opinions by Drs. Nellis and Koss-Leland. But the first factor does not justify the remedy Plaintiff seeks. The record is mixed, creating doubt as to Plaintiff's disability prior to the Onset Date, even if these opinions were credited as true.[9] The record suggests that Plaintiff was working between the 2019 and 2020 accidents and the ALJ presumed – but could "not . . . confirm[] with any certainty" – that Plaintiff met his step one burden prior to the Onset Date. *See* Tr. 18; *see also* Tr. 305 (June 2019 medical recording indicating that Plaintiff was driving for his family's business but could not perform other physical aspects of job), 402 (June 10, 2019 record indicating Plaintiff had "returned to work at modified duty," would leave for work between 7:30 and 8:00 am, and sometimes develop headaches around noon); 1170 (December 25, 2020 record indicating that Plaintiff worked part time repairing, installing, and selling spas). Further proceedings could include additional testimony from Plaintiff or the owner of the family-run spa business and would be useful to properly weigh and evaluate this evidence. Understanding the nature of Plaintiff's employment may further aid in evaluating the consistency and supportability of Dr. Nellis's opined limitations. This case does not present the rare circumstance in which an immediate award of benefits is warranted.

**IT IS ORDERED:**

1. The ALJ's decision is **affirmed in part** and **reversed in part** as set forth

---

[9] The Court notes that the VE testified that the addition of a light restriction to Plaintiff's RFC would not preclude the representative occupations of investigator, usher, or boat rental clerk. Tr. 58 ("Q: If the individual should avoid bright lights, would that rule out any or all of these jobs? A: I don't believe so, Your Honor.").

above. The case is **remanded** for further proceedings consistent with this Order.

  2. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 1st day of August, 2022.

*David G. Campbell*
_____
David G. Campbell
Senior United States District Judge